IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES WALSH | : |
| Plaintiff, | : |
| vs. | : No. 4:24-cv-01878-MWB |
| LUZERNE COUNTY, LUZERNE BUREAU OF ELECTIONS, and LUZERNE COUNTY BOARD OF ELECTIONS AND REGISTRATION | : |
| Defendants | : |

**AMENDED COMPLAINT**

**INTRODUCTION**

1. "The Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964). The right to vote is fundamental, precious, and sacred. See, e.g., *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 670 (1966). Voting is a "fundamental right" under the Fourteenth Amendment and it is a right protected by the First Amendment because it secures "opportunities of all voters to express their own political preferences." *Norman v. Reed*, 502 U.S. 279, 288 (1992).

2. Defendants are affecting the right to vote and placed that right to vote in jeopardy because they failed to perform their basic duties under the Pennsylvania Election Code.

3. In that regard, the Defendants have received vote registrations which were timely filed before the October 21, 2024 deadline but those voters have still not been added to voter rolls. The deadline to file registration expired on October 21, 2024 and those voters whose registrations were timely filed must be added to the voter list or they will be denied their right to vote in the November 5, 2024 general election.

4. Additionally, the Defendants have received mail in ballot applications but have not sent out ballots in response. Mail in ballots must be received by the Board of Elections by 8:00 p.m. on November 5, 2024.

5. The Defendants' failure to send out mail in ballots in a proper and timely manner will prevent the voters from being able to have their ballot returned to Defendants before the deadline so that their votes will be counted in the November 5, 2024 general election.

6. Under the Pennsylvania Election Code, Defendants had an affirmative duty to examine voter registration applications and process the voter registration applications based upon the results of the examination. 25 Pa.C.S. §1328.

7. Under the Pennsylvania Election Code, Defendants had an affirmative duty to process mail-in vote requests from registered voters and mail the ballots to voters. 25 P.S. §3150.12b; 25 P.S. §3150.15.

8. Upon information and belief, despite the requirements of 25 Pa.C.S. § 1328, Defendants are failing and/or refusing to process the approximately 2,500 additional new applications for voter registration, even though such applications were submitted prior to the October 21, 2024, deadline.

9. Further, upon information and belief, Defendants are failing and/or refusing to timely process several thousand mail-in vote requests from voters.

10. Plaintiff brings this action to vindicate the statutory and constitutional right being violated by the Defendants and to prevent future violations of those rights to vote by Defendants.

**PARTIES, JURISDICTION, AND VENUE**

11. Plaintiff, James Walsh, is a qualified and registered voter in the Commonwealth of Pennsylvania who resides in Luzerne County and candidate for Representative of the 119th Legislative District in the General Assembly, sui juris.

12. Defendant County of Luzerne ("Luzerne County") is a county of the third class organized and existing under the laws of the Commonwealth of Pennsylvania.

13. Defendant Luzerne County Board of Elections and Registration (the "Board") is a county board of elections organized under 25 P.S. § 2641 and the Luzerne County Home Rule Charter. The Board is responsible for administering elections in Luzerne County pursuant to the Pennsylvania Election Code and all federal, state, and local laws and regulations.

14. Defendant Luzerne County Bureau of Elections (the "Bureau of Elections") is a bureau of Luzerne County tasked with carrying out the edicts, directives, orders, and decrees of the Board in administering elections in Luzerne County and managing the personnel requirements or requests of the Board.

15. All Defendants are persons who are required to act under Pennsylvania law and also under color of state law to avoid depriving Plaintiff of constitutional rights. 42 U.S.C. § 1983; see *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *Ex parte Young*, 209 U.S. 123 (1908).

## BACKGROUND

16. Defendants Luzerne County, Luzerne County Bureau of Elections and Luzerne County Board of Elections and Registration are collectively referred to herein as the Defendants.

17. Plaintiff's Complaint calls on the Court to address the Defendants' failure to comply with Pennsylvania law regarding the processing of voter registration applications and the distribution of mail-in ballots.

18. Initially, Defendants have a pattern and practice of significant and serious failures during elections within Luzerne County.

19. By way of background, in September of 2020, one of Defendants' workers discarded nine completed military absentee ballots into the trash.[1]

---

[1] https://www.politico.com/news/magazine/2020/10/30/voting-mail-election-2020-paranoia-433356

20. During the 2022 election, paper ballot shortages caused by the Defendants resulted in voters being unable to cast ballots, despite the intervention of a judge requiring polling places to remain open for two extra hours.[2]

21. Most recently, the Defendants incorrectly spelled the name of the Republican incumbent candidate for Representative of the 119th Legislative District in the General Assembly, Alec Ryncavage, requiring the Defendants to reprint and re-issue approximately 6,700 mail-in ballots.[3]

22. However, even the Defendants' efforts to correct their mistake as to Alec Ryncavage's name has led to further errors. For example, several voters are reported to have received two replacement ballots instead of one.[4]

23. The instant case concerns the Defendants' most basic responsibilities in the run-up to an election: the processing of applications to register to vote and requests for mail-in ballots.

24. Upon information band belief, approximately 2,500 individuals residing within Luzerne County submitted applications to register to vote to the Defendants pursuant to 25 Pa.C.S. §

---

[2]https://www.spotlightpa.org/news/2024/10/election-lawsuit-pennsylvania-luzerne-county-paper-shortage/

[3]https://www.wvia.org/news/local/2024-10-11/luzerne-county-says-it-will-re-issue-6-700-mail-in-ballots-after-ryncavages-name-was-misspelled

[4]https://www.timesleader.com/news/1671016/a-few-luzerne-county-mail-voters-report-receipt-of-two-replacement-ballots-instead-of-one

1324 (concerning applications to register to vote by mail) prior to the October 21, 2024, deadline for registration relative to the November 2024 election.

25. Pursuant to 25 Pa.C.S. § 1328, Defendants are required to examine those voter registration applications and process the voter registration applications based upon the results of its examination.

26. Upon information and belief, despite the requirements of 25 Pa.C.S. § 1328, Defendants are failing and/or refusing to timely process the approximately 2,500 additional new applications for voter registration, even though such applications were submitted prior to the October 21, 2024, deadline.

27. Further, upon information and belief, Defendants are failing and/or refusing to timely process several thousand mail-in vote requests from voters.

28. Plaintiff, as a resident of Luzerne County, a registered voter, and candidate for Representative of the 119th Legislative District in the General Assembly, has a direct interest in Defendant's performance of its statutory and official duty to process voter registrations and mail-in vote requests relative to the November 2024 election.

29. Defendants' official edicts, actions, pronouncements, and long-standing and persistent customs and policies were the moving force behind, and caused, the violation of plaintiff's constitutional rights.

30. The Pennsylvania Election Code and the Luzerne County Home Rule Charter vest the Board with final decision-making authority regarding the administration of elections in Luzerne County. 25 P.S. § 2641(a); Luzerne County Home Rule Charter § 8.04.

31. The Board of Elections is a five-member board and it has final decision- making authority regarding elections in Luzerne County.

32. The Board of Elections is responsible for creating, implementing, and enforcing policies, practices, and procedures to ensure that elections in Luzerne County are conducted according to federal and state election laws and to ensure that voters are not disenfranchised.

33. Pursuant to 25 Pa.C.S. § 1328, Defendants are required to examine those voter registration applications and process the voter registration applications based upon the results of its examination.

34. Pursuant to Pennsylvania law, Defendants are also required to send mail- in ballots to voters that request mail-in ballots in time so that they may be returned in a timely manner.

35. The Bureau of Elections' employees carry out, implement, and enforce the policies, practices, procedures, directives, and duties of the Board.

36. The Board employs the director of elections. The director of elections is responsible for all personnel and employees of the Bureau.

37. The director of elections is responsible for, among other things, planning, directing, coordinating, and controlling overall operations of the Bureau of Elections. The job duties of the director of elections include:

    a.    communicating election day activities;

    b.    preparing for and conducting primary, general, municipal, school district, and special elections;

    c.    monitoring, developing, and implementing national and state election legislation and legal decisions;

    d.    planning, directing, and controlling the preparation and conducting of elections in Luzerne County;

    e.    preparing ballots;

    f.    recruiting and training of election workers;

    g.    establishing department policies and procedures; and

    h.    maintaining an office manual.

38. The director of elections maintains final decision-making authority within the Bureau of Elections.

39. Defendants made affirmative directives, decisions, or decrees to fail and/or refuse to timely process the approximately 2,500 additional new applications for voter registration, even though such applications were submitted prior to the October 21, 2024, deadline.

40. Defendants made affirmative directives, decisions, or decrees to fail and/or refuse to process several thousand mail-in vote requests from voters.

41. Defendants made affirmative directives, decisions, or decrees as aforesaid caused the violation of Plaintiffs' constitutional rights.

42. Defendants' affirmative directives, decisions, or decrees reflected their deliberate choice not to timely process the approximately 2,500 additional new applications for voter registration, even though such applications were submitted prior to the October 21, 2024, deadline.

43. Defendants' affirmative directives, decisions, or decrees reflected their deliberate choice not to process the several thousand mail-in vote requests from voters.

44. Defendants maintain additional policies and practices that are so wide- spread as to practically have the force of law. Defendants' policies and practices are manifested not only in the affirmative actions and decisions they made regarding the number of ballots, but also in a number of decisions not to take certain actions necessary to administering a fair and effective election.

45. Defendants' policy of inaction, considering the actual or constructive notice that it would cause constitutional violations, is the functional equivalent of a decision by the Defendants' themselves.

46. Defendants acted with deliberate indifference to the rights of Plaintiffs.

47. In sum, Defendants violated the Plaintiff's rights through the following policies and practices which had the effect of policy:

    a.    failing and/or refusing to timely process the approximately 2,500 additional new applications for voter registration, even though such applications were submitted prior to the October 21, 2024, deadline.

    b.    failing and/or refusing to timely process several thousand mail-in vote requests from voters.

48. Additionally, to the extent that such policies were not the moving force causing Plaintiffs' disenfranchisement, but rather unauthorized conduct by the Defendants that caused the disenfranchisement, then the Defendants are liable for such unauthorized conduct.

## COUNT I
## VIOLATION OF 25 Pa.C.S. § 1328

49. Plaintiff incorporates by reference all of the preceding paragraphs as if set forth more fully herein.

50. Pursuant to 25 Pa.C.S. § 1328, Defendants are required to examine voter registration applications **upon receipt** and process the voter registration applications based upon the results of its examination:

Approval of registration applications.

(a) Examination.--Upon receiving a voter registration application, a commissioner, clerk or registrar of a commission shall do all of the following:

    (1) Initial and date the receipt of the application.

    (2) Examine the application to determine all of the following:

        (i) Whether the application is complete.

        (ii) Whether the applicant is a qualified elector.

        (iii) Whether the applicant has an existing registration record. After the commission is

>> connected to the SURE system, the commissioner, clerk or registrar shall search the SURE system on a Statewide basis to determine if the applicant has an existing registration record.
>>
>> (iv) Whether the applicant is entitled or qualified to receive the requested transfer or change, if applicable.
>
> (b) Decision.--A commission shall do one of the following:
>
> (1) Record and forward a voter registration application to the proper commission if the commission finds during its examination under subsection (a) that the applicant does not reside within the commission's county but resides elsewhere in this Commonwealth.
>
> (2) Reject a voter registration application, indicate the rejection and the reasons for the rejection on the application and notify the applicant by first class nonforwardable mail, return postage guaranteed of the rejection and the reason if the commission finds during its examination under subsection (a) any of the following:
>
>> (i) The application was not properly completed and, after reasonable efforts by the commission to ascertain the necessary information, the application remains incomplete or inconsistent.
>>
>> (ii) The applicant is not a qualified elector.
>>
>> (iii) The applicant is not entitled to a transfer of registration or a change of address.
>>
>> (iv) The applicant is not legally qualified for a change of name.
>>
>> A rejection shall be made no later than ten days before the election succeeding the filing of the application.
>
> (3) Process a voter registration application in accordance with subsection (c) if the commission finds during its examination under subsection (a) all of the following:
>
>> (i) The application requests registration.

    (ii) The application contains the required information indicating that the applicant is a qualified elector of the county.

(4) Process a voter registration application in accordance with subsection (c) and update its registration records if the commission finds during its examination under subsection (a) all of the following:

    (i) The application requests registration.

    (ii) The application contains the required information indicating that the applicant is a qualified elector of the county.

    (iii) The applicant is currently a registered elector of the county.

(5) Process a voter registration application in accordance with subsection (c) and request transfer of registration records in accordance with subsection (d) if the commission finds during its examination under subsection (a) all of the following:

    (i) The application requests registration.

    (ii) The application contains the required information indicating that the applicant is a qualified elector of the county.

    (iii) The applicant is currently a registered elector of another county.

(6) Process a voter registration application in accordance with subsection (c) and request transfer of registration records in accordance with subsection (d) if the commission finds during its examination under subsection (a) all of the following:

    (i) The application requests a transfer of registration.

    (ii) The application contains the required information indicating that the applicant is a qualified elector of the county.

    (iii) The applicant is currently a registered elector of another county.

(7) Process a voter registration application in accordance with subsection (c) and update its

>> registration if the commission finds during its examination under subsection (a) all of the following:
>>
>> > (i) The application requests a change of address.
>> >
>> > (ii) The application contains the required information indicating that the applicant is a qualified elector of the county.
>> >
>> > (iii) The applicant is currently a registered elector of the county.
>
> (8) Process a voter registration application in accordance with subsection (c) and update its registration records if the commission finds during its examination under subsection (a) all of the following:
>
> > (i) The application requests a change of name.
> >
> > (ii) The applicant is legally qualified to a change of name.
> >
> > (iii) The application contains the required information indicating that the applicant is a qualified elector of the county.
> >
> > (iv) The applicant is currently a registered elector of the county.

25 Pa.C.S. § 1328(a), (b).

51. Upon information and belief, despite the requirements of 25 Pa.C.S. § 1328, Defendants are failing and/or refusing to process the approximately 2,500 additional new applications for voter registration, even though such applications were submitted prior to the October 21, 2024, deadline.

52. Plaintiff, as a resident of Luzerne County, a registered voter, and candidate for Representative of the 119th Legislative District in the General Assembly, has a direct interest in Defendant's performance of its statutory and official duty to

process voter registrations relative to the November 2024 election.

53. Plaintiff does not have any other adequate remedy at law.

## COUNT II
## VIOLATION OF 25 P.S. § 3150.12b and 25 P.S. § 3150.15

54. Plaintiff incorporates by reference all of the preceding paragraphs as if set forth more fully herein.

55. Pursuant to 25 P.S. § 3150.12b, Defendants are required to process requests for mail-in ballots **upon receipt**:

> (a)Approval process.--The county board of elections, upon receipt of any application of a qualified elector under section 1301-D, shall determine the qualifications of the applicant by verifying the proof of identification and comparing the information provided on the application with the information contained on the applicant's permanent registration card. The following shall apply:
>
> (1) If the board is satisfied that the applicant is qualified to receive an official mail-in ballot, the application shall be marked "approved."
>
> (2) The approval decision shall be final and binding, except that challenges may be made only on the grounds that the applicant was not a qualified elector.
>
> (3) Challenges must be made to the county board of elections prior to five o'clock p.m. On the Friday prior to the election : provided, however, that a challenge to an application for a mail-in ballot shall not be permitted on the grounds that the elector used an application for a mail-in ballot instead of an application for an absentee ballot or on the grounds that the elector used an application for an absentee ballot instead of an application for a mail-in ballot.

56. Further, pursuant to 25 P.S. § 3150.15, Defendants are required to deliver those mail-in ballots to voters within a specified time period:

> The county board of elections, upon receipt and approval of an application filed by a qualified elector under section 1301-D, shall commence to deliver or mail official mail-in ballots as soon as a ballot is certified and the ballots are available. While any proceeding is pending in a Federal or State court which would affect the contents of any ballot, the county board of elections may await a resolution of that proceeding but in any event, shall commence to deliver or mail official mail-in ballots not later than the second Tuesday prior to the primary or election.

25 P.S. § 3150.15

57. Upon information and belief, Defendants are intentionally failing and/or refusing to timely process approximately several thousand mail-in vote requests from voters.

58. In fact, at a public meeting of the Board which occurred on October 23, 2023, the Board, despite request, failed and refused to identify and process or standard by which ballots would be mailed by defendants in order to allow the voters to receive the ballots and return the ballots by the November 5, 2024 8:00 p.m. deadline.

59. Plaintiff does not have any other adequate remedy at law.

**COUNT III**
**Violation of the First and Fourteenth Amendments Right to Vote**

60. Plaintiffs incorporate the previous paragraphs by reference.

61. "The Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).

62. The right to vote cannot be denied outright or where the government imposes substantial burdens on the right to vote. See, *Storer v. Brown*, 415 U.S. 724, 729-730 (1974); *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008).

63. The right to vote is a fundamental right under the substantive Due Process Clause of the Fourteenth Amendment.

64. The right to vote is a right to express one's political preferences in the democracy under the First Amendment.

65. Defendants, acting under the color of state law, are affecting the right to vote and placing that right to vote in jeopardy because they are failing or refusing to perform their basic duties under the Pennsylvania Election Code and under the United States Constitution.

66. Defendants' wholly inadequate actions and election administration policies subject Plaintiffs' access to the ballot to wholly unlawful and improper conduct in violation of the substantive Due Process Clause of the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and issue an order requiring that:

1) the Defendants perform the act or duty required of them under 25 Pa.C.S. § 1328, and process all outstanding applications for voter registration that were received prior to the October 21, 2024, deadline;

2) the Defendants perform the act or duty required of them by 25 P.S. § 3150.12b and 25 P.S. § 3150.15 and mail out the mail-in ballots to all remaining voters that have requested them so that they may be returned within the time permitted to mail in mail-in ballots;

3)  A writ of mandamus be issued against defendants;

4.  the defendants take all actions to avoid disenfranchisement of constitutional rights of voters to vote in the November 5, 2024 election;

5)  such other further relief as deemed necessary and proper by this Court.

`

                Respectfully Submitted,

                THE LAW OFFICE OF CHARLES KANNEBECKER


                <u>/s/ Charles Kannebecker</u>
                Charles Kannebecker, Esq.