IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES WALSH,                          :        No. 4:24-CV-01878
                                      :
            Plaintiff,                :        (Chief Judge Brann)
                                      :
      v.                              :
                                      :
LUZERNE COUNTY, LUZERNE               :
BUREAU OF ELECTIONS,                  :
and LUZERNE COUNTY BOARD              :
OF ELECTIONS AND REGISTRATION,        :
                                      :
            Defendants.               :

**DEFENDANT LUZERNE COUNTY BOARD
OF ELECTIONS AND REGISTRATION'S
BRIEF IN SUPPORT OF MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**I.     Relevant Procedural History and Statement of Facts:**

Defendant Luzerne County Board of Elections and Registration ("Board")

submits the present brief in support of its Motion to Dismiss Plaintiff's Amended

Complaint.  As this matter is in an embryonic procedural stage, its history and

factual underpinnings are thin and intertwined.

This matter originated with Plaintiff's filing of a Complaint and "Motion" for

Special and Preliminary Injunction in the Court of Common Pleas of Luzerne

County, PA, on October 25, 2024, alleging violations of various constitutional and

state election law provisions. These alleged violations (vaguely outlined in both the

original and the Amended Complaint) related to processing of voter registrations and delivery of mail-in ballots for the November 5, 2024 General Election, namely that the defendants: (a) failed to process "approximately 2,500" new voter registrations (Doc. 7, ¶¶ 8, 24, 26, 39, 42, 47a, 51); and (b) had not timely processed "several thousand" mail in ballot applications and ballots themselves (Doc. 7, ¶¶ 9, 27, 40, 43, 47b, 57). Despite these allegations of "thousands" of harmed individuals, the Amended Complaint fails to allege that Plaintiff himself was one of these, or that he was harmed in a particular or specific manner.

Although administrative officials of Co-defendant Luzerne County became aware of this filing at that time, service was apparently not effectuated until October 28, 2024. On the 28th, the Court of Common Pleas scheduled a hearing on Plaintiff's Motion for October 30, 2024. At that hearing, counsel for Co-defendants Luzerne County ("County") and Luzerne County Bureau of Elections ("Bureau")[1] advised their intent to remove this matter to this Court (which was effectuated that same day).

This Court held a status conference via telephone on October 31, 2024. At that time, among other matters discussed were the captioning error noted on

---

[1] The original Complaint and Motion mis-named Co-defendant Luzerne County Bureau of Elections as "Luzerne County *Board* of Elections" (emphasis added). At the urging of this Court during status conference, Plaintiff filed the Amended Complaint but again mis-names the Co-defendant, now referring to same as "Luzerne Bureau of Elections" without reference to the "County."

Plaintiff's original filings, (*see* footnote 1, *supra*), and the Board's verbal assent to removal. Also discussed was the possibility of resolving Plaintiff's alleged concerns through meeting with Bureau officials and exploring what, if any, voter registration and mail-in ballot requests were unprocessed. The Court indicated the possibility of an evidentiary hearing late in the day on November 1, 2024 if resolution were not achieved. Plaintiff's original counsel communicated with the Court on the morning of November 1, 2024 advising that "[w]hile we have not managed to resolve the matter, the parties have had helpful communications and the issues will be narrowed for the court and the presentation will be honed." (Doc. 8). This Court issued an Order that day scheduling an evidentiary hearing for November 4, 2024. (Doc. 10).[2]

On November 4, 2024, Plaintiff submitted two letters (Docs. 11 and 12) withdrawing his motion for injunctive relief, advising the Court that, given the late hour of the scheduled hearing, any injunction issued at that point would be difficult to be "effective," thus negating the need for an evidentiary hearing. The Court thereafter issued an Order cancelling the hearing. (Doc. 14).

---

[2] The Scheduling Order further directed the Board to "file a 'clear and unambiguous' written indication" of its consent to the removal by noon on November 4, 2024. *Id*. The Board complied with this directive. (Doc. 13). Both during the October 31, 2024 status conference, as well as in its Scheduling Order (Doc. 10), the Court recognized the potential issue of Plaintiff's standing, which is now subject of the present motion.

Thereafter, the defendants filed their respective motions to dismiss on November 15, 2024 (the County and Bureau's motion at Doc. 15; the Board's motion at Doc. 16). Plaintiff's new counsel filed an entry of appearance on November 18, 2024. (Doc. 17). The present brief is submitted pursuant to LR 7.7 and 7.8 in support of the Board's motion. (Doc. 16).

**II.    Question Presented:**

Should Plaintiff's Amended Complaint be dismissed due to Plaintiff's lack of standing?

**Suggested Answer:**

Yes.

**III.    Argument:**

"It's axiomatic that a plaintiff must have standing to bring a claim against a defendant. And a court must determine whether a plaintiff has standing before addressing the merits of any claim before it." *Lee v. U.S. Dep't of Just.*, 554 F. Supp. 3d 1228, 1233 (N.D. Ala. 2021)(cleaned up). The Supreme Court has outlined the particular boundaries of the standing question which lies threshold before any merits consideration in a particular matter may be undertaken:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result

of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)(cleaned up).

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

In the present case, the Amended Complaint alleges that "thousands" of individuals are suffering constitutional and statutory harm due to the Defendants' alleged inactions, yet nowhere are any of these individuals identified, nor are any specifics offered as to how any particular individual has suffered any particular harm.  Aside from the vagueness of such allegations, the Amended Complaint's impotence is further highlighted by the failure to allege that Plaintiff himself has suffered any of these harms.  Without even a hint of such an allegation, the Amended Complaint is irredeemable due to Plaintiff's failure to establish his standing.

In its Scheduling Order (Doc. 10), the Court suggested examination of two cases regarding the standing question, *Bost v. Ill. State Bd. of Elections*, 114 F.4th 634 (7th Cir. 2024) and *Trump v. Wis. Elections Comm'n*, 506 F. Supp. 3d 620 (E.D. Wis. 2020), *aff'd*, 983 F.3d 919 (7th Cir. 2020).  Both cases support dismissal of this matter.

The issues raised by the plaintiffs in *Bost* centered on allegations of certain federal violations due to Illinois law which allowed counting of mail-in ballots after Election Day. The plaintiffs claimed standing as both voters and candidates, with each position rejected by the court: As allegedly harmed voters, the Court held that the plaintiffs 'only claim[ed] a generalized grievance affecting all Illinois voters; therefore, they have not alleged a sufficiently concrete and particularized injury in fact to support Article III standing." *Bost*, 114 F.4th at 641.

Regarding the claim of standing as political candidates, the plaintiffs' standing argument stemmed from allegations that campaign monies would have to be expended to challenge ballots received post-election, something which the court rejected as too remote to allow the claim to proceed:

> [T]o confer Article III standing, a plaintiff's injury must not only be concrete and particularized but also actual or imminent. The latter requirement for standing ensures that the alleged injury is not too speculative for Article III purposes. Thus, when a claimant premises standing on a future harm, the harm must be more than just possible—the allegedly threatened injury must be certainly impending.

*Id.* at 642.

In the present case, and as noted above, there is nothing "concrete or particularized" about any injury claimed in the Amended Complaint. *Id.* at 641. Whether presented as a voter or a candidate, Plaintiff 's claims have failed to satisfy the "particularized" prong of any standing analysis.

6

The *Bost* candidate-plaintiffs' shortcomings are likewise present here, given the speculative nature of harm alleged in the Amended Complaint. As this action was initiated on October 25, 2024, and without *any* specifics regarding who or how the alleged violations affected any particular voter or registrant (most importantly, how these affected Plaintiff himself), there is nothing but rampant speculation as to how Plaintiff as a candidate or voter suffered harm or how Defendants' alleged failures impacted an election which was still more than 10 days away.

The same is true with regard to the analysis provided by the Seventh Circuit in *Trump, supra.* While, notably, the court found that the plaintiff, then-President Trump, had established standing in his capacity as presidential candidate, the circumstances surrounding that case and the present are decidedly different. In *Trump*, the plaintiff alleged violations of the Constitution's Electors Clause which, if proven, would have had a profound impact on Wisconsin's allocation of electors to the 2020 Electoral College. (Wisconsin's electors, like those in forty seven other states, are chosen per statewide popular vote. *See* https://www.archives.gov/electoral-college/allocation (last visited November 27, 2024)("All States, except for Maine and Nebraska, have a winner-take-all policy where the State looks only at the overall winner of the state-wide popular vote.").) The *Trump* plaintiff therefore alleged a concrete and particularized injury [as a]

candidate[ ]" sufficient to sustain a challenge to his standing.  *Trump,*  983 F.3d at
924.

The same is glaringly not true instantly.  Initially, while the Amended
Complaint cites Plaintiff's status as candidate for a seat in the Pennsylvania House
of Representatives, it makes no reference whatsoever that any of the "thousands"
of allegedly harmed registrants and mail-in voters are from his purported district.
What only adds to an embarrassing confusion is Plaintiff's stunning failure to
allege the proper House district in which he was seeking election.  As noted in the
Board's motion to dismiss:

> Plaintiff in ¶¶ 11, 21, 28, 52 of the Amended Complaint mistakenly asserts
> that the office he was running for was a seat representing the "119th
> District" in the Pennsylvania General Assembly. Plaintiff, however, was the
> unopposed candidate for the *117th* District.  *See* Exhibit A, p.2 [Doc. 16-3].
> In either case, the Amended Complaint fails to allege that *any* of the so-
> called "2,500" registrants or the "several thousand" mail in ballot requestors
> were from *either* the 119th or the 117th Districts.

Motion to Dismiss, Fn. 3 (Doc. 16).

Against this backdrop, not only does Plaintiff fail to allege sufficient harm of
"a concrete and particularized" nature as a voter, he puzzlingly fails to provide
even a glimpse of accurate information for the Court to explore harm to him as a
candidate since he fails to allege the correct vicinage from which he seeks office.

In this light, the Amended Complaint's fatal flaws fail to permit a finding of Plaintiff's standing to proceed. It must therefore be dismissed.[3]

## IV.    Conclusion:

For the foregoing reasons, the Board prays this Court grant its motion to dismissed.

Respectfully submitted,

s/Joseph M Cosgrove
SELINGO GUAGLIARDO LLC
345 Market Street
Kingston PA 18704
570-287-2400
    preferred email and fax:
    jmcosgro@msn.com
    570-227-0096
    *Attorneys for Defendant*
    *Luzerne County Board of*
    *Elections and Registration.*

---

[3] While standing is often raised as a jurisdictional question and challenged under FED.R.CIV.P. 12(b)(1), it is appropriately addressed, at least in the instant context, as a Rule 12(b)(6) matter. *See, e.g., Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 594 fn 2 (2d Cir. 1993)(recognizing the appropriateness of dismissal for lack of standing under both 12(b)(1) and 12(b)(6)).  This is especially so given that, although often addressed as a "jurisdictional" issue, the question of standing is more comfortably one of "justiciability."  *See, e.g., Baker v. Carr,* 369 U.S. 186, 198–208 (1962)(recognizing distinction between "jurisdiction" and "justiciability"); *see also, Harrow v. Dep't of Def.*, 601 U.S. 480, 489, fn 1 (2024)(citing case as "one more example (our recent decisions have offered many) of how this Court used to apply the term 'jurisdiction' in a 'profligate' manner ...").  In either event, the Plaintiff has failed to plead a cause of action in which his standing to bring the matter is established. As such, his Amended Complaint cannot survive.  *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)("In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: Courts must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party. ... A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.")(cleaned up).

## CERTIFICATE OF SERVICE

I Joseph M Cosgrove, do hereby certify that a true and correct copy of the present Brief in Support of Motion to Dismiss was served this 28th day of November 2024 via the Court's Electronic Case Filing (ECF) system upon all counsel of record.

s/Joseph M Cosgrove