IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES WALSH, | : | No. 4:24-CV-01878 |
| Plaintiff, | : | (Chief Judge Brann) |
| v. | : | |
| LUZERNE COUNTY, LUZERNE BUREAU OF ELECTIONS, and LUZERNE COUNTY BOARD OF ELECTIONS AND REGISTRATION, | : | |
| Defendants. | : | |

**DEFENDANT LUZERNE COUNTY BOARD
OF ELECTIONS AND REGISTRATION'S
BRIEF IN SUPPORT OF MOTION TO
DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

**I.      Relevant Procedural History and Statement of Facts:**

The instant brief is submitted by Defendant Luzerne County Board of Elections and Registration ("Board") in support of its Motion to Dismiss Plaintiff's Third Amended Complaint. Doc. 37. Although this matter has been pending for several months, its procedural history and underlying facts are thin and intertwined (procedurally complicated only by the several amendments to Plaintiff's complaint), especially since no hearings have occurred nor discovery undertaken.

This case commenced in state court on October 25, 2024. At that time, Plaintiff filed a Complaint and "Motion" for Special and Preliminary Injunction in

the Court of Common Pleas of Luzerne County, PA, alleging violations of various constitutional and state election law provisions. The substance of these alleged violations claim that the Defendants failed to process certain voter registrations and deliver requested mail in ballots for the November 5, 2024 General Election. These allegations (which have only been vaguely outlined in each version of Plaintiff's complaints) accuse the "Defendants" of: (a) failing to process "approximately 2,500" new voter registrations (Doc. 30, ¶¶ 8, 24, 26, 39, 42, 47a, 58); and (b) failing to timely process "several thousand" mail in ballot applications and ballots themselves (Doc. 30, ¶¶ 9, 27, 40, 43, 47b, 65).

Despite these allegations of "thousands" of harmed individuals, the Third Amended Complaint fails to allege that Plaintiff himself was one of these, or that he was impacted in a particular or specific manner by the Board.

Although administrative officials of Co-Defendant Luzerne County became aware of this initial filing, service was apparently not effectuated until October 28, 2024. On the 28th, the Court of Common Pleas scheduled a hearing on Plaintiff's Motion for October 30, 2024. At that hearing, counsel for Co-Defendants Luzerne County ("County") and Luzerne County Bureau of Elections ("Bureau")(and

collectively "County Defendants")¹ advised of their intent to remove this matter to this Court (which was effectuated that same day).

This Court held a status conference via telephone on October 31, 2024. At that time, among other matters discussed, were the captioning error noted on Plaintiff's original filings, (*see* footnote 1, *supra*), and the Board's verbal assent to removal. Also discussed was the possibility of resolving Plaintiff's alleged concerns through meeting with Bureau officials and exploring what, if any, voter registration and mail in ballot requests were unprocessed.  The Court indicated the possibility of an evidentiary hearing late in the day on November 1, 2024 if resolution were not achieved.  Plaintiff's original counsel communicated with the Court on the morning of November 1, 2024 advising that "[w]hile we have not managed to resolve the matter, the parties have had helpful communications and the issues will be narrowed for the court and the presentation will be honed."  (Doc. 8).²  This Court issued an Order that day scheduling an evidentiary hearing for November 4, 2024. (Doc. 10).³

---

¹ The original Complaint and Motion mis-named Co-Defendant Luzerne County Bureau of Elections. At the urging of this Court during the status conference on October 31, 2024, Plaintiff filed the Amended Complaint but again mis-named the Co-Defendant.  This error has been corrected in both the Second and Third Amended Complaints.
² Plaintiff also filed his Amended Complaint on November 1. Doc. 6.
³ The Scheduling Order further directed the Board to "file a 'clear and unambiguous' written indication" of its consent to the removal by noon on November 4, 2024. *Id*.  The Board complied with this directive.  (Doc. 13).  Both during the October 31, 2024 status conference, as well as in its Scheduling Order (Doc. 10), the Court recognized the potential issue of Plaintiff's standing, which is now addressed in the instant motion, and herein.

On November 4, 2024, Plaintiff submitted two letters (Docs. 11 and 12) withdrawing his motion for injunctive relief, advising the Court that, given the late hour of the scheduled hearing, any injunction issued at that point would be difficult to be "effective," thus negating the need for an evidentiary hearing. The Court thereafter issued an Order cancelling the hearing. (Doc. 14).

The Defendants filed their respective motions to dismiss the Amended Complaint on November 15, 2024 (the County and Bureau's motion at Doc. 15; the Board's motion at Doc. 16) followed by their respective briefs (Docs. 18 and 19). On December 5, 2024, Plaintiff submitted his unopposed motion to file his Second Amended Complaint, Doc. 20, which the Court granted, Doc. 21.

In light of the filing of the Second Amended Complaint, Doc. 22, the Court denied the County Defendants' and Board's motions to dismiss the Amended Complaint as "moot." Doc. 23.

The County Defendants and the Board filed respective motions to dismiss the Second Amended Complaint, Docs. 25 and 24, which was followed by another unopposed request by Plaintiff to again amend his complaint. Doc. 28. Again, the Court granted this request. Doc. 29. With the filing of the Third Amended Complaint (which is at issue presently, Doc. 30), the Court again denied the motions to dismiss the Second Amended Complaint as "moot." Doc. 33.

The County Defendants filed their motion to dismiss the Third Amended Complaint on January 21, 2025, Doc. 31. After grant of leave by this Court, Doc. 36, the Board filed its motion to dismiss on January 24, 2025. Doc. 37.  The present brief is submitted pursuant to LR 7.5 and 7.8 in support of the Board's motion.

**II.   Questions Presented:**

    a. Should Plaintiff's Third Amended Complaint be dismissed for failure to present a justiciable claim, specifically:

        -Plaintiff lacks standing;

        -Plaintiff's claims are moot;

        Plaintiff's claims are not ripe.

        **Suggested Answers:**

        Yes.

    b. Should Plaintiff's Third Amended Complaint be dismissed for failure to state a claim upon which relief can be granted?

        **Suggested Answers:**

        Yes.

**III.   Argument:**

    a.   **Plaintiff's claims are not justiciable.**

Before this Court can act in this matter, it must be constitutionally empowered to do so:

> The Court's constitutional power to entertain a cause of action stems from Article III of the United States Constitution. Article III section 2 empowers the courts of the United States to adjudicate only matters that present a "case" or "controversy." This constitutional question of whether a matter presents an Article III "case" or "controversy" is addressed under the general rubric of justiciability; concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so.

*Bell Atl. Corp. v. MFS Commc'ns Co.*, 901 F. Supp. 835, 841–42 (D. Del. 1995)(cleaned up).

### i. Plaintiff does not have standing to bring this action.

The question of a party's "standing" to bring an action is one of the justiciability threshold questions which must be satisfied before further action may be undertaken by the court.

"It's axiomatic that a plaintiff must have standing to bring a claim against a defendant. And a court must determine whether a plaintiff has standing before addressing the merits of any claim before it." *Lee v. U.S. Dep't of Just.*, 554 F. Supp. 3d 1228, 1233 (N.D. Ala. 2021)(cleaned up). The Supreme Court has outlined the particular boundaries of the standing question:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)(cleaned up).

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

In the present case, the Third Amended Complaint alleges that "thousands" of individuals suffered or are suffering constitutional and statutory harm due to the Defendants' alleged inactions, yet nowhere are any of these individuals identified, nor are any specifics offered as to how any particular individual has suffered any particular harm. Aside from the vagueness of such allegations, the Third Amended Complaint's impotence is further highlighted by the failure to allege that Plaintiff himself has suffered any of these harms. Without even a hint of such an allegation, the Third Amended Complaint is irredeemable.

Giving the Third Amended Complaint all deference, it can only be read as, at best, advancing alleged claims of individuals other than Plaintiff. In this light, Plaintiff fails to allege his own cause and thus fails to establish his standing to bring this action:

> [W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction. [E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.

*Warth,* 422 U.S. at 499 (cleaned up).

The closest Plaintiff gets to asserting a unique and personal interest in his claims is his allegation that he "is a qualified and registered voter in the Commonwealth of Pennsylvania who resides in Luzerne County and candidate for Representative of the 117th Legislative District in the General Assembly..." and is "now the incumbent [Representative] of the 117th Legislative District ..." Doc. 30, ¶¶ 11, 52.  These allegations, however, are devoid of connection to the alleged voter registration and/or mail in ballot failures at the heart of the Third Amended Complaint.  Likewise, there is nothing in this complaint to suggest that the Board itself had committed any violation of law with regard to Plaintiff himself (or anyone else, for that matter).

Now as the incumbent legislator, and moored to nothing specific, Plaintiff alleges merely on "information and belief," that a "majority" of the unnamed 2,500 alleged voter registrants and alleged "thousands" of mail in ballot requestors "intended to vote for Plaintiff" in the November 2024 election. Doc. 30, ¶ 49. Even if these vague allegations were true, they do nothing to advance Plaintiff's standing nor suggest that anything other than someone else's rights (i.e., the alleged unnamed registrants and mail in voters) are at issue.  As noted, Plaintiff's "rest[ing] his claim to relief on the legal rights or interests of third parties," *Warth, supra,* does nothing to place this case in the safe harbor of standing.

In its Scheduling Order (Doc. 10), the Court suggested examination of two cases regarding the standing question, *Bost v. Ill. State Bd. of Elections*, 114 F.4th 634 (7th Cir. 2024) and *Trump v. Wis. Elections Comm'n*, 506 F. Supp. 3d 620 (E.D. Wis. 2020), *aff'd*, 983 F.3d 919 (7th Cir. 2020). Both cases support dismissal of this matter.

The issues raised by the plaintiffs in *Bost* centered on allegations of certain federal violations due to Illinois law which allowed counting of mail-in ballots after Election Day. The plaintiffs claimed standing as both voters and candidates, with each position rejected by the court: As allegedly harmed voters, the Court held that the plaintiffs "only claim[ed] a generalized grievance affecting all Illinois voters; therefore, they have not alleged a sufficiently concrete and particularized injury in fact to support Article III standing." *Bost*, 114 F.4th at 641.

Regarding the claim of standing as political candidates, the plaintiffs' argument stemmed from allegations that campaign monies would have to be expended to challenge ballots received post-election, something which the court rejected as too remote to allow the claim to proceed:

> [T]o confer Article III standing, a plaintiff's injury must not only be concrete and particularized but also actual or imminent. The latter requirement for standing ensures that the alleged injury is not too speculative for Article III purposes. Thus, when a claimant premises standing on a future harm, the harm must be more than just possible—the allegedly threatened injury must be certainly impending.

*Id.* at 642.

In the present case, and as noted above, there is nothing "concrete or particularized" about any injury claimed in the Third Amended Complaint. *Id.* at 641. Whether presented as a "voter" or a "candidate," Plaintiff's claims have failed to satisfy the "particularized" prong of any standing analysis.

The *Bost* candidate-plaintiffs' shortcomings are likewise present here, given the speculative nature of harm alleged in the Third Amended Complaint. As this action was initiated on October 25, 2024, and without *any* specifics regarding how the alleged violations affected any particular voter or registrant (most importantly, how these affected Plaintiff himself), there is nothing but rampant speculation as to how Plaintiff as a candidate or voter suffered harm, or how Defendants' alleged failures impacted an election which was still more than 10 days away (and with time to correct any error if one were specifically identified). Further, Plaintiff's claims that expending campaign funds to litigate the present matter, including the effort to seek "emergency preliminary injunction," Doc. 30, ¶ 51, does nothing to confer standing, since, like the *Bost* litigants, "electing to undertake expenditures to insure against a result that may or may not come" fails to confer standing. *See Bost*, 114 F.4th at 643.[4]

---

[4] As noted in the Board's motion, Doc. 37, Plaintiff had every opportunity to present his case before this Court at the evidentiary hearing scheduled for November 4, 2024. But instead of allowing the Court to address the issues and determine what (if any) relief were available, Plaintiff short circuited his own cause and preemptively determined that the Court could not provide any relief which would have "practical" effect. *See* Docs. 11 and 12. Along with

The same is true with regard to the analysis provided by the Seventh Circuit in *Trump, supra.* While, notably, the court found that the plaintiff had established standing in his capacity as presidential candidate, the circumstances surrounding that case and the present are decidedly different. In *Trump*, the plaintiff alleged violations of the Constitution's Electors Clause which, if proven, would have had a profound impact on Wisconsin's allocation of electors to the 2020 Electoral College. (Wisconsin's electors, like those in forty seven other states, are chosen per statewide popular vote. *See* https://www.archives.gov/electoral-college/allocation (last visited January 28, 2025)("All States, except for Maine and Nebraska, have a winner-take-all policy where the State looks only at the overall winner of the state-wide popular vote.")). The *Trump* plaintiff therefore alleged a "concrete and particularized injury [as a] candidate[ ]" sufficient to sustain his standing. *Trump,* 983 F.3d at 924.

The same is glaringly not true instantly. Initially, while the Third Amended Complaint cites Plaintiff's status as candidate (now incumbent) for a seat in the Pennsylvania House of Representatives, it makes no reference whatsoever that any violation of rights of the "thousands" of allegedly harmed registrants and mail in voters harmed *him* in winning his election. Rather than allegations of specific facts

---

essentially waiving any further right to this Court's grant of relief, any claim that expenditure for this withdrawn effort confers standing is wholly without merit.

relative to an electoral *structure* as was noted in *Trump*, Plaintiff merely cites "information and belief" that of these "thousands" of aggrieved electors, "a majority" would have voted for him. Doc. 30, ¶ 49.  As the successful (and unopposed) candidate, this allegation fails to establish Plaintiff's standing to bring this action.

In this light, the Amended Complaint's fatal flaws require its dismissal.[5]

### ii. Plaintiff's claims are moot.

Along with standing, the question of whether a matter is moot likewise raises a threshold question of constitutional justiciability:

> At the threshold, we are constrained to determine whether this case continues to present a viable, justiciable controversy suitable for judicial

---

[5] The Board's motion seeks dismissal regarding the threshold justiciability questions under both FED.R.CIV.P. 12(b)(1) and (6). While standing is often raised as a jurisdictional question and challenged under FED.R.CIV.P. 12(b)(1), it is appropriately addressed, at least in the instant context, as a Rule 12(b)(6) matter. *See, e.g., Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 594 fn 2 (2d Cir. 1993)(recognizing the appropriateness of dismissal for lack of standing under both 12(b)(1) and 12(b)(6)).  This is especially so given that, although often addressed as a "jurisdictional" issue, the question of standing is more comfortably one of "justiciability." *See, e.g., Baker v. Carr*, 369 U.S. 186, 198–208 (1962)(recognizing distinction between "jurisdiction" and "justiciability"); *see also, Harrow v. Dep't of Def.*, 601 U.S. 480, 489, fn 1 (2024)(citing case as "one more example (our recent decisions have offered many) of how this Court used to apply the term 'jurisdiction' in a 'profligate' manner ...").  In either event, the Plaintiff has failed to plead a cause of action in which his standing to bring the matter is established. As such, his Third Amended Complaint cannot survive.  *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)("In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: Courts must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party. ... A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.")(cleaned up). As these principles apply to the question of standing, they are likewise amenable to application to the other justiciability issues of mootness and ripeness, *infra*.

resolution. Whether a controversy has become moot is a preliminary matter which a federal court must resolve before it assumes jurisdiction.

*Blackshear Residents Org. v. City of Austin*, 659 F.2d 36, 37 (5th Cir. 1981)(cleaned up).

Plaintiff is now the duly elected Representative of Legislative District 117 and is a member of Pennsylvania's House of Representatives. Whatever harm he attempts to allege regarding voter registrations and/or mail in ballot failures, nothing impacted his ability to seek and obtain elected office.

> A plaintiff's claim is rendered moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. The central question of all mootness issues, then, is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.

*Mayer v. Wallingford-Swarthmore Sch. Dist.*, 405 F. Supp. 3d 637, 640 (E.D. Pa. 2019)(cleaned up).

As there is no relief available to further advance Plaintiff as a candidate, his claims fall squarely within the orbit of mootness jurisprudence. As such, his Third Amended Complaint should be dismissed.

### iii. Plaintiff's claims are not ripe.

Despite having been elected to the office he sought, an election which was not hampered by the (albeit vague) allegations he makes in his Third Amended Complaint, Plaintiff now seems to project harm into the future, and does so with an even greater display of vagueness. Plaintiff claims that if the allegedly improper actions by the Board "and/or the [Luzerne County] Bureau of Elections were to

13

continue ... it is *quite possible* that Plaintiff will be irreparably harmed again in the upcoming primary and/or general election ..." Doc. 30, ¶ 53 (emphasis added). As it is unclear as to what "upcoming" elections Plaintiff refers (especially since his seat will not be on the ballot until 2026), and given the extraordinarily vague assertion of some harm being "quite possible," it is clear that Plaintiff seeks peremptory action against something which may or may not occur.

> [The] basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.

*Marriott Senior Living Servs., Inc. v. Springfield Twp.*, 78 F. Supp. 2d 376, 384–85 (E.D. Pa. 1999).

With nothing more than "abstract" speculation regarding what, if any, future election may be impacted by the vague and unclear allegations of harm rampant throughout the Third Amended Complaint, Plaintiff fails to present a ripe claim, thus negating this Court's ability to proceed. As such, the Third Amended Complaint should be dismissed.

      **b.    The Third Amended Complaint fails to state a claim upon which relief may be granted.**

At its core, the Third Amended Complaint is rife with bald faced and vague allegations which provide not the least bit of inference that any specific elector was harmed by these Defendants. Most importantly for the present motion, there is absolutely nothing in this Complaint to suggest even the slightest violation of any

particular or specified duty on the part of the Board. Even accepting as true all the facts alleged in the Third Amended Complaint, Plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), thus requiring dismissal of the Third Amended Complaint. Fed. R. Civ. P. 12(b)(6).

      Respectfully submitted,

      s/Joseph M Cosgrove
      PA ID 37130
      SELINGO GUAGLIARDO LLC
      345 Market Street
      Kingston PA 18704
      570-287-2400

          preferred email and fax:
          jmcosgro@msn.com
          570-227-0096

      *Attorneys for Defendant Luzerne County Board of Elections and Registration.*